LINDA M. LIBERI TONER, PETITIONER *v.* COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 555–76.   Filed February 12, 1979.

*Mary Ann Hagan* and *Margaret M. Boyce,* for the petitioner.
*Marc A. Feller,* for the respondent.

SIMPSON, *Judge:* The Commissioner determined a deficiency of
$177.41 in the petitioner's Federal income tax for 1973. The sole
issue to be decided is whether the petitioner, a teacher in a
Catholic elementary school, may deduct as a business expense
the cost of college courses leading to a bachelor's degree.

## FINDINGS OF FACT

Some of the facts have been stipulated, and those facts are so
found.

The petitioner, Linda M. Liberi Toner, maintained her legal
residence in Broomall, Pa., at the time her petition was filed in
this case. She filed her individual Federal income tax return for
1973 with the Internal Revenue Service, Philadelphia, Pa.

During the year 1973, Mrs. Toner was employed as a lay
teacher at St. Clement's Catholic Elementary School (St.
Clement's), a school operated under the auspices of the
Philadelphia archdiocese. The archdiocese advised and assisted in
the operation of St. Clement's and the other Catholic schools in
the archdiocese. St. Clement's employed both lay teachers and
teachers who were members of a religious order. Lay teachers at
St. Clement's were selected either by the pastor or the principal
of the school.

In 1970, Mrs. Toner filed an application with the archdiocese

for a teaching position in one of the Catholic elementary schools. She was interviewed by an official of the archdiocese and the principal of St. Clement's, and she was employed to teach at St. Clement's beginning in 1971. School officials considered the following factors in selecting teachers to teach at a Catholic elementary school: evidence of the applicant's ability to work in a religious atmosphere and of her moral character and ability to uphold the moral values and religious purpose of the school, a recommendation from her parish pastor, and references from other qualified persons. The applicant also had to possess a high school diploma and present a high school transcript indicating her intellectual capacities. These criteria were recommended by the Archdiocesan office and were followed at St. Clement's.

Mrs. Toner had graduated from high school and had completed 2 full years of college when she began teaching at St. Clement's in 1971. The usual educational background of a beginning lay teacher at St. Clement's was a high school education, and none of the other lay teachers at St. Clement's had a college degree when Mrs. Toner began teaching there. The number of Catholic elementary school teachers who had bachelor's degrees when they began teaching varied from parish to parish, but no parish in the Philadelphia archdiocese required a bachelor's degree of its beginning elementary teachers. On the other hand, virtually all the teachers in the Catholic high schools in the archdiocese were required to have a college degree when they were hired. The State of Pennsylvania imposed no educational requirements for teachers hired by the Philadelphia archdiocese. However, the State generally did require that a nonvocational teacher in a public school or in a nonreligious private school possess a bachelor's degree. Salaries for teachers in the Catholic elementary schools in the Philadelphia area were significantly lower than those in the public schools.

Upon commencing employment at a Catholic elementary school in the Philadelphia archdiocese, a lay teacher was required to sign an agreement that she take a minimum of 6 college credits per year until such time as she obtained her college degree. Mrs. Toner signed such an agreement. The purpose of such agreement was to assure that a teacher would keep abreast of current practices in the teaching profession. The teacher was required to sign this agreement annually until such time as she obtained a college degree. However, aside from the

requirement that she sign such agreement, a teacher was not required to obtain a degree. A teacher who already had her bachelor's degree or State certification did not have to sign such agreement. No other educational requirements were imposed on teachers at St. Clement's, although teachers there were advised to take some theology courses, in keeping with the religious nature of the school. A teacher with a bachelor's degree received a higher salary than a teacher with similar experience but without a degree.

The functions of a teacher at St. Clement's were to train her students in Christian principles and to teach formal classes in subjects such as religion, social studies, math, and English. The religious purpose of the education was also carried over to the teaching of secular subjects. Mrs. Toner's functions were the same as those of all other teachers at St. Clement's and included preparing the children for their liturgy at mass, teaching prayers, and preparing the students for confirmation and religious ceremonies. Her responsibility for religious instruction was the same as that of the teachers who belonged to the religious order. Mrs. Toner was accorded full faculty status equal to that of other faculty members at St. Clement's, and she served on faculty committees and had an equal voice in faculty affairs. She was also covered by the lay employees' retirement plan operated by the archdiocese of Philadelphia.

Since she was a child in grade school, Mrs. Toner expected to go to college; she was interested in the areas of medicine and teaching. After graduation from high school, she entered Villanova University as a full-time student in 1968. She began in the nursing school but soon transferred to the general humanities program. In September 1970, she enrolled in Villanova's night school and changed her major to education, with a specialty in English. She obtained her bachelor's degree in September 1973. Villanova had a State-approved program for teacher certification, and upon graduation, Mrs. Toner received a State teaching certificate issued by the Pennsylvania Board of Education. She has never applied for a teaching position in the public schools. She continued to teach at St. Clement's until December 1976, shortly before the birth of her first child.

In 1973, Mrs. Toner took 15 credits at Villanova consisting of the following courses: Education 263, The Problem Child; Education 298, Student Teaching; English 224, Major American

Writers II; and Psychology 225, Psychology of Motivation. On her Federal income tax return for 1973, she deducted her expenses for tuition, student teaching, transportation, textbooks, and other related amounts for a total of $906.28. In his notice of deficiency, the Commissioner disallowed the entire amount on the grounds that the expenses were incurred to meet the minimum educational requirement for qualification in her employment and were not deductible.

## OPINION

We must decide whether the petitioner is entitled to deduct the educational expenses paid by her in 1973. She maintains that when she began teaching at St. Clement's, she already satisfied the minimum educational requirement of her employer, that the educational courses taken by her in 1973 were to maintain and improve her skills as a teacher, and that she is entitled to deduct the expenses incurred for such education. The Commissioner concedes that the minimum educational requirement of St. Clement's, the petitioner's employer, was graduation from high school, that the petitioner had met such educational requirement when she was employed, and that the education pursued by her in 1973 did in fact maintain or improve her skills as a teacher. Nevertheless, the Commissioner contends that her educational expenses were personal and not deductible because her education was pursued to enable her to achieve her lifelong objective of completing a college education and because such education enabled her to satisfy the minimum educational requirement generally applicable to members of the teaching profession. We need not decide whether a teacher's education to obtain a bachelor's degree is always to be treated as meeting the minimum educational requirements of the profession, but we are satisfied that in this case, the expenses of the education are not deductible.

Section 162(a), I.R.C. 1954,[1] allows a deduction for all the ordinary and necessary expenses of carrying on a trade or business. On the other hand, section 262 expressly disallows a deduction for all personal expenses. Section 1.162–5, Income Tax Regs., sets forth criteria for distinguishing those educational

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the year in issue.

expenses which are deductible as business expenses under section 162(a) from those educational expenses which are personal and not deductible. In part, such section provides:

Sec. 1.162–5 Expenses for education.

(a) *General rule.* Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education—

(1) Maintains or improves skills required by the individual in his employment or other trade or business, or

(2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.

(b) *Nondeductible educational expenditures*—(1) *In general.* Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations.

(2) *Minimum educational requirements.* (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. * * *

(ii) The minimum educational requirements for qualification of a particular individual in a position in an educational institution is the minimum level of education (in terms of aggregate college hours or degree) which under the applicable laws or regulations, in effect at the time this individual is first employed in such position, is normally required of an individual initially being employed in such a position. * * *

\*       \*       \*       \*       \*       \*       \*

(3) *Qualification for new trade or business.* (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. * * *

Such criteria have been consistently approved and used by the courts in deciding whether educational expenses are deductible.

See *Davis v. Commissioner*, 65 T.C. 1014, 1017 (1976); *O'Donnell v. Commissioner*, 62 T.C. 781, 783 (1974), affd. without published opinion 519 F.2d 1406 (7th Cir. 1975); *Bodley v. Commissioner*, 56 T.C. 1357, 1361 (1971); *Jungreis v. Commissioner*, 55 T.C. 581, 588 n. 6 (1970); *Weiler v. Commissioner*, 54 T.C. 398, 402 (1970); *Weiszmann v. Commissioner*, 52 T.C. 1106, 1111–1112 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971).

In this case, we are particularly concerned with the meaning of section 1.162–5(b)(2), Income Tax Regs., relating to the minimum educational requirement. By its terms, the provision applies to education which meets the minimum educational requirement "for qualification in his employment *or other trade or business.*" (Emphasis added.) In determining what is the minimum requirement, the regulations also suggest that we look at both "the requirements of the employer" and "the standards of the profession, trade, or business involved." Thus, the provision clearly applies either to education which meets the minimum requirement of the taxpayer's employer *or* to education which meets the minimum requirement of another trade or business.

In connection with the construction of section 1.162–5, Income Tax Regs., we declared in *Garwood v. Commissioner*, 62 T.C. 699, 702 (1974), "The thrust of the regulations is to distinguish between educational expenses that are ordinary and necessary expenses of a trade or business and those that are personal and capital expenditures." See also *Bradley v. Commissioner*, 54 T.C. 216, 220 (1970). In *Jungreis v. Commissioner*, 55 T.C. at 591, we pointed out that "It is essential to recognize the balance which must be maintained between section 162 on the one hand and sections 262 and 263 on the other hand in deciding the deductibility of educational expenses." When the facts show that a taxpayer undertook education to meet the minimum educational requirements of a new position with his employer, it follows that the educational expenses are not the ordinary and necessary expenses of his current employment. *Davis v. Commissioner, supra.* Similarly, when educational expenses are incurred by a taxpayer to meet the minimum educational requirement of another trade or business, such expenses are not the ordinary and necessary expenses of his current employment. *Garwood v. Commissioner, supra.* In *Garwood,* the taxpayer was a substitute teacher who had not yet completed his college

education. He continued such education and claimed a deduction for the expenses thereof. However, we held that such expenses were not deductible in part because they enabled him to meet the minimum educational requirement of a regular teaching position. He had a position as a substitute teacher when the educational expenses were incurred, but because that education enabled him to meet the minimum requirement of a regular teaching position, the educational expenses were not ordinary and necessary expenses of his position as a substitute teacher. In reaching such conclusion, it was immaterial that the taxpayer never in fact became a regular teacher. Similarly, in deciding whether education qualifies a person for a new trade or business, it is immaterial whether the person does in fact become employed in such new trade or business.[2] *Diaz v. Commissioner*, 70 T.C. 1067 (1978); *Sharon v. Commissioner*, 66 T.C. 515 (1976), affd. per curiam 591 F.2d 1273 (9th Cir. 1978).

The facts of this case show that St. Clement's required merely that the petitioner secure 6 hours of college credits each year to maintain her skills as a teacher. Yet, the petitioner, since she was a child, expected to obtain a college education, and upon completing high school, she immediately enrolled in a college program at Villanova. Before she began teaching, she had already completed 2 years of college and was specializing in education. In 1973, she took 15 hours of credits, and between 1970 and 1973, she completed the remaining 2 years of her college program, thus taking credits each year greatly in excess of those required by St. Clement's. Clearly, the petitioner's education in 1973 achieved much more than merely maintaining her skills as required by her employer.

Without the bachelor's degree, the petitioner could teach only in the Catholic elementary schools. However, as a result of the educational program which she completed in 1973, she secured her bachelor's degree, and with that degree, she could also teach in the Catholic high schools. Moreover, with her degree, she was certified by the State as a teacher, thereby qualifying her to

---

[2] The Commissioner has not taken the position that the educational expenses incurred by Mrs. Toner in 1973 were not deductible because the education qualified her for a new trade or business within the meaning of sec. 1.162–5(b)(3), Income Tax Regs., and we have not relied upon such fact in reaching our decision. Nevertheless, in construing the meaning of sec. 1.162–5(b)(2), Income Tax Regs., relating to education which meets the minimum requirement of a trade or business, it is appropriate to point out that a similar rule is applicable in the analogous situation involving education which qualifies a taxpayer for a new trade or business.

teach in the public schools and in private nonreligious schools. Although we have no evidence that she ever planned to teach in other schools, she was qualified if she ever wished to do so. In summary, although the petitioner had met the minimum educational requirement for the position as a Catholic elementary school teacher, the completion of her college education enabled her to meet the minimum educational requirement of another trade or business; that is, she was fully qualified to accept a teaching position in schools generally. See *Burnstein v. Commissioner*, 66 T.C. 492 (1976).

In support of her position, the petitioner relies upon the decisions in *Marlor v. Commissioner*, 251 F.2d 615 (2d Cir. 1958), revg. per curiam 27 T.C. 624 (1956); *Devereaux v. Commissioner*, 292 F.2d 637 (3d Cir. 1961), revg. a Memorandum Opinion of this Court; *United States v. Michaelsen*, 313 F.2d 668, 669 (9th Cir. 1963); and *Laurano v. Commissioner*, 69 T.C. 723 (1978). However, in each of those cases, the facts are significantly different than in the case now before us. In *Marlor*, the taxpayer had completed his basic college education, and the issue involved the deductibility of the expenses of securing a doctoral degree. In *Devereaux*, the issue also concerned the deductibility of the expenses of securing a doctoral degree. In *Michaelsen*, the taxpayer had completed 4 years of college, and the issue was whether he could deduct the expenses of completing a fifth year of college. In *Laurano*, the taxpayer was already a fully certified teacher, and she was seeking to deduct the expenses of some additional education. None of such cases involved the completion of the basic college education needed to engage generally in the teaching profession.

In deciding whether the education qualifies a teacher for a new trade or business, section 1.162–5(b)(3)(i), Income Tax Regs., states: "For this purpose, all teaching and related duties shall be considered to involved the same general type of work." However, such provision does not assist the petitioner in this case. In *Diaz v. Commissioner, supra,* the taxpayer, who had not yet completed her college education, was working as an associate teacher while continuing her college education. The Court considered section 1.162–5(b)(3)(i), Income Tax Regs., but held that such provision was applicable only to those teachers who had already met the minimum educational requirement for becoming a teacher. (70 T.C. at 1075.) Here, the petitioner was

qualified to teach in the Catholic elementary schools only; she had not met the minimum educational requirement for teacher certification and could not teach in the schools generally. On the facts of this case, we hold that the petitioner's educational expenses are not deductible because her education enabled her to satisfy the minimum educational requirement generally applicable in the teaching profession.[3]

The petitioner maintains that the Commissioner's determination, if sustained, would violate the First Amendment to the United States Constitution. She asserts that the Commissioner's disallowance of a deduction for educational expenses claimed by Catholic elementary school teachers in effect establishes the minimum educational requirements for Catholic schools. She contends that such action by the Commissioner constitutes "excessive entanglement" in the conduct of a religious organization in violation of the First Amendment and relies on the cases of *Meek v. Pittenger*, 421 U.S. 349 (1975); *Lemon v. Kurtzman*, 403 U.S. 602 (1971); *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); and *Catholic Bishop of Chicago v. NLRB*, 559 F.2d 1112 (7th Cir. 1977), cert. granted 434 U.S. 1061 (1978). The petitioner also asserts that Catholic school teachers have been "singled out" as a class and discriminated against because of their positions with the Catholic schools.

Although there is evidence that the Commissioner has disallowed a deduction for educational expenses claimed by another lay teacher at St. Clement's, there is not evidence to support a finding that Catholic school teachers have been singled out and treated differently because of their positions with the Catholic schools. The Commissioner denies that there has been any discrimination against Catholic school teachers as such. He asserts that he is merely fulfilling his responsibility of administering the Federal revenue laws and applying to all taxpayers the same general principles for determining whether education-

---

[3]The petitioner has made no claim that, in any event, she should be allowed to deduct the expenses incurred for 6 hours of credit because she was required to take such credits by her employer. Moreover, sec. 1.162–5(b)(1), Income Tax Regs., expressly provides that if education enables the teacher to meet the minimum educational requirement of a trade or business or if it qualifies her for a new trade or business, the expenses thereof are not deductible even though the education satisfies the requirements of her employer or maintains her skills in her trade or business. Similarly, even though education serves both business and personal purposes, the cases have not allowed an allocation of the expenses and a deduction for the business portion. *Sharon v. Commissioner*, 66 T.C. 515 (1976); *Carroll v. Commissioner*, 51 T.C. 213 (1968), affd. 418 F.2d 91 (7th Cir. 1969).

al expenses are deductible. We have concluded that he acted properly in denying the deduction claimed by the petitioner.

Moreover, the petitioner has no basis for contending that she has been discriminated against. She seeks to deduct the costs of securing her college education, but teachers in the public schools who are required to complete such education before beginning teaching are certainly not allowed to deduct such costs. *Diaz v. Commissioner, supra.* Thus, in fact, she is claiming more favorable tax treatment than is generally available to taxpayers.

In part, the First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Such provision has been construed to prohibit any law which leads to "excessive entanglement" by the Government in the operation of a religious organization. *Meek v. Pittenger, supra; Lemon v. Kurtzman, supra.* However, such proposition has no applicability in this case. The Commissioner had to decide whether to allow the deduction for educational expenses claimed by the petitioner, and in making that decision, he had to examine all the surrounding circumstances to determine whether the expenses were ordinary and necessary within the meaning of section 162(a) or whether such expenses were personal within the meaning of section 262. He concluded that such expenses were personal, in part because they enabled the petitioner to secure a bachelor's degree, which is generally required of members of the teaching profession. After reviewing the circumstances, we have applied the general principles of the Federal tax laws and have also found that the expenses are not deductible. Yet, in reaching our decision, we have adopted no rules regulating the operations of St. Clement's or the other Catholic elementary schools in the Philadelphia area. The Commissioner has not, in fact, undertaken to establish the minimum educational requirements for St. Clement's or any other Catholic elementary school; those schools remain free to establish their own requirements for their teachers, and they may continue to employ teachers with only a high school education. Thus, the Commissioner has in no way become

entangled in the operation of such schools. For such reasons, we reject the petitioner's constitutional objection.

*Decision will be entered for the respondent.*

Reviewed by the Court.

DRENNEN, *J.*, concurring: I agree with Judge Sterrett in his concurring opinion that the language in section 1.162–5(b)(2), Income Tax Regs., "expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in *his employment or other trade or business*" (emphasis added) refers to the taxpayer's present employment or any present trade or business *of the taxpayer*, rather than just any other trade or business as seems to be implied by the majority.

I also agree with Judge Chabot in his concurring opinion that, whether the trade or business of the Pennsylvania nonvocational elementary school teachers in public and nonreligious private schools is considered to be the same trade or business as petitioner's present employment or is considered to be a new trade or business, the educational expenses here involved are nondeductible under either subparagraph (b)(2) or (b)(3) of the above regulation. Cf. *Diaz v. Commissioner*, 70 T.C. 1067 (1978).

I therefore concur in the result reached by the majority.

CHABOT, *J.*, agrees with this concurring opinion.

STERRETT, *J.*, concurring: While I agree with the result reached by the majority that petitioner's educational expenses are not deductible, I premise my conclusion on a different ground.

The majority, in making reference to section 1.162–5(b)(2), Income Tax Regs., seems to be saying that that subparagraph requires disallowance of educational expenses incurred in order to meet the minimum educational requirements necessary for qualification in *another* trade or business, with the implication that such trade or business is a new trade or business. If that subparagraph actually so provided, subparagraph (3) of that

regulation would be redundant. In my view, subparagraph (2) in fact refers to any present trade or business of the taxpayer other than his employment.

It is section 1.162–5(b)(3), Income Tax Regs., that disqualifies the petitioner herein from deducting her educational expenses.[1] That subparagraph provides for the nondeductibility of expenditures made with respect to "a program of study being pursued by him which will lead to qualifying him in a new trade or business." Herein petitioner's program of study led to her qualification for certification by the State as a teacher. Once certified, petitioner could teach in public schools, Catholic high schools, or in private nonreligious schools. I find this situation analogous to the line of cases in which we have found a significant qualitative difference between accountants and certified public accountants. E.g., *Glenn v. Commissioner*, 62 T.C. 270, 275 (1974). As in that line of cases I find that the difference in petitioner's potential scope of practice as a certified teacher is significant when compared to that of a noncertified teacher.[2]

CHABOT, *J.*, concurring: I concur in the result in this case and in so much of the majority's opinion as deals with petitioner's argument under the First Amendment to the United States Constitution. As set forth hereinbelow, I would reach the result by a different route.

During the taxable year before us, petitioner was employed as a nonvocational teacher in a Catholic elementary school under the auspices of the Philadelphia Archdiocese in Philadelphia, Pa. State law generally required a nonvocational teacher in a public school or in a nonreligious private school to possess a bachelor's degree, but did not impose any educational requirements for teachers hired by the Philadelphia Archdiocese.

Either the Pennsylvania nonvocational elementary school

---

[1]Apparently this subsection was not considered by the parties. See n. 2 of the majority opinion. However, we may uphold a deficiency based on legal grounds other than those relied upon by respondent. *Wilkes-Barre Carriage Co. v. Commissioner*, 39 T.C. 839, 845 (1963), affd. per curiam 332 F.2d 421 (2d Cir. 1964), and cases cited thereat.

[2]Because we find a significant distinction between a certified and a noncertified teacher, the language of sec. 1.162–5(b)(3)(i), Income Tax Regs., stating that all teaching duties involve the same general type of work is inapplicable. Cf. *Diaz v. Commissioner*, 70 T.C. 1067, 1075 (1978).

teachers in public and nonreligious private schools are generally in the same trade or business as petitioner and we proceed under sec. 1.162–5(b)(2), Income Tax Regs., or they are generally in a different trade or business from petitioner and we proceed under sec. 1.162–5(b)(3), Income Tax Regs.

*Same trade or business.*—If they are in the same trade or business, then (under the regulations) the expenditures are not deductible if the education was required of petitioner in order to meet the minimum educational requirements for qualification in that trade or business (sec. 1.162–5(b)(2)(i), Income Tax Regs.), i.e., the minimum level of education which is normally required of an individual initially being employed in an elementary school teaching position (sec. 1.162–5(b)(2)(ii), Income Tax Regs.). Since a bachelor's degree normally is required of elementary school teachers in Pennsylvania, and petitioner's educational expenditures were for courses which led to an acceptable bachelor's degree, it follows that under the same-trade-or-business alternative, petitioner is not entitled to deduct the expenditures here at issue.

*New trade or business.*—If nonvocational elementary school teaching in public or nonreligious private schools is a new trade or business, then (under the regulations) the expenditures are not deductible if the education is part of a program of study being pursued by petitioner which will lead to qualifying her in that trade or business (sec. 1.162–5(b)(3)(i), Income Tax Regs.). Since petitioner's educational expenditures were for courses which led to qualifying her as a nonvocational elementary school teacher in public and nonreligious private schools, it follows that under the new-trade-or-business alternative, petitioner is not entitled to deduct the expenditures here at issue.

*Conclusion.*—The same result appears to follow whether we conclude that the boundary of petitioner's trade or business includes or excludes teaching in Pennsylvania public or nonreligious private schools. The drawing of this boundary line appears to be a difficult task, at least on the record before us. Under these circumstances, I would decline to decide which of the alternative provisions of the regulations controls.[1]

---

[1]The dissenting opinion of Judge Goffe relies, in part, on *Marlor v. Commissioner*, 251 F.2d 615 (2d Cir. 1958), revg. per curiam 27 T.C. 624 (1956), and the approval by the Third Circuit and the Ninth Circuit of *Marlor* in *Devereaux v. Commissioner*, 292 F.2d 637, 639 (3d Cir. 1961), revg. a Memorandum Opinion of this Court (T.C. Memo. 1960–87), and *United States v. Michaelsen*, 313 F.2d

I concur in the result reached by the majority.

FAY, *J.*, dissenting: I respectfully dissent.

In disallowing the disputed deduction, the majority rests its conclusion on section 1.162–5(b)(2)(i), Income Tax Regs., which denies a deduction for expenditures made by an individual for education which is required in order to meet the minimum educational requirements "for qualification in [her] employment or other trade or business." In so doing, the majority interprets, and in my opinion significantly alters, the descriptive phrase "for qualification in [her] employment or other trade or business" to mean "for qualification in [her] employment or [*another*] trade or business." To me the language of the regulation, as written, refers to an individual's employment, or, in the case of a self-employed individual, to an individual's trade or business.

In addition to its misreading of section 1.162–5(b)(2)(i), Income Tax Regs., the majority inexplicably fails to discuss subsection (ii) of that same regulation which deals specifically with teachers. This regulation provides that the minimum educational requirements for qualification in a position in an educational institution are those required by the applicable State laws. However where, as in the instant case, the State imposes no educational requirements for teachers, the regulation further states:

---

668, 671–672 (9th Cir. 1963), affg. *Johnson v. Commissioner*, a Memorandum Opinion of this Court (T.C. Memo. 1961–119), for the position that petitioner should be able to deduct the expenses of education required by her employer in order to hold her present position. In reversing the Tax Court in *Marlor*, the Second Circuit relied on the dissenting opinion of Judge Raum, in which he had stated that "On the other hand, petitioner's work toward his doctorate had a much more immediate objective." (27 T.C. at 626.) Thus, Judge Raum concluded that Marlor's primary purpose in securing the additional education related to his current employment as a tutor rather than qualifying him for a permanent staff position (in which latter case the expenses would not be deductible). Therefore, *Marlor* rests on a finding of primary purpose. See *Weiszmann v. Commissioner*, 52 T.C. 1106, 1108–1109 (1969), affd. per curiam 443 F.2d 29 (9th Cir. 1971).

Under the present regulations, deductibility of educational expenses is determined by objective criteria, and does not depend on a finding of primary purpose. *Jungreis v. Commissioner*, 55 T.C. 581, 587 (1970). Accordingly, cases such as *Marlor*, *Devereaux*, and *Michaelsen*, have no significance in applying the present regulations, and the majority in the instant case have made no finding of primary purpose. However, even if deductibility did depend on petitioner's purpose, it would be clear that the expenses would not be deductible because her primary purpose was to fulfill her lifelong objective of securing a college education.

If there are no normal requirements as to the minimum level of education required for a position in an educational institution, then an individual in such a position shall be considered to have met the minimum educational requirements for qualification in that position when he becomes a member of the faculty of the educational institution. * * *

In view of this, I would hold that when petitioner first became a member of the faculty of the school where she taught, she satisfied the minimum educational requirements within the meaning of respondent's regulations.

Although not relied upon by respondent, Judges Sterrett, Chabot, and Drennen would disallow the deduction on the basis of section 1.162–5(b)(3), Income Tax Regs., which precludes a deduction for "education which is part of a program of study being pursued" by a taxpayer "which will lead to qualifying [her] in a new trade or business." They reason that petitioner's qualification for certification as a teacher by the State allowed her to teach in public schools, Catholic high schools, and in private nonreligious schools, and thus, qualified her for a new trade or business. In my opinion, this conclusion totally ignores the language and thrust of section 1.162–5(b)(3)(i), Income Tax Regs., which, in part, states:

In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. *For this purpose, all teaching and related duties shall be considered to involve the same general type of work.* * * * [Emphasis added.]

Judge Sterrett analogizes the instant situation to those cases which have held that a practicing noncertified accountant and a certified public accountant are in separate trades or businesses. See *Glenn v. Commissioner*, 62 T.C. 270 (1974). However, a close reading of those cases indicates that the underpinning for the decisions was not the mere issuance of a certificate; rather, it was the various and different duties performable by each type of accountant.

In our case, respondent's regulations could not be more clear in stating that *all* teaching duties involve the same general type of work. In this regard, I agree with Judge Goffe's observation that a "teacher is a teacher is a teacher is a teacher." Simply put, to me the most that can be said of petitioner's education is that it resulted in a difference in "degree" but not in kind.

I would allow the disputed deduction.

FEATHERSTON, IRWIN, QUEALY, GOFFE, HALL, and WILES, *JJ.*, agree with this dissenting opinion.

GOFFE, *J.*, dissenting: I respectfully dissent. The majority has interpreted section 1.162–5(b)(2), Income Tax Regs., in such a manner that, in effect, it is applying section 1.162–5(b)(3), Income Tax Regs., upon which the Commissioner never relied. For convenience, the subsections of section 1.162–5 of the regulations will sometimes hereafter be referred to as (b)(2) and (b)(3).

Section 1.162–5, Income Tax Regs., permits a taxpayer to deduct expenses for education within limited perimeters. Subsections (b)(2) and (b)(3) specify expenditures for educational expenses which are not deductible. Subsection (b)(2) denies deductions for educational expenses *required* of the taxpayer "in order to meet the minimum educational requirements for qualification in his employment *or other trade or business.*" (Emphasis added.) It is undisputed that petitioner, prior to the year before the Court, met the minimum educational requirements for the position she occupied as an elementary teacher in the Catholic schools; i.e., a high school diploma.

The language of (b)(2) which establishes criteria for ascertaining the minimum educational requirements of the employee's existing position does not apply here because the minimum educational requirements of petitioner's present position are not in dispute. The factors which (b)(2) takes into consideration include the requirements of the employer upon which the parties agree. The majority relies upon another factor, "the standards of the profession * * * involved," yet cites no authority as to why that factor should prevail over the "requirements of the employer" factor.

The majority proceeds to hold that teaching in the public schools is another trade or business and earning her college degree enabled petitioner to meet the requirements of the other trade or business; i.e., teaching in the public schools. In addition to misconstruing and misapplying (b)(2), the majority confuses (b)(2) with (b)(3), the latter of which is entitled, *"Qualification for new trade or business."* As Judges Drennen and Sterrett point out in their concurring opinions, the erroneous interpreta-

tion of (b)(2) by the majority makes (b)(3) redundant. The majority is unable to cite any authority for its interpretation that (b)(2) should be applied to any employment position other than the one in which the taxpayer is presently engaged. *Burnstein v. Commissioner*, 66 T.C. 492 (1976), cited by the majority, was based strictly on (b)(3), not (b)(2).

Teaching is not a trade or business when the teacher is employed by either the parochial or public school system. Such a teacher is undeniably an employee. He or she earns a salary and is not self-employed. "Other trade or business" used in (b)(2) obviously refers to the *present* occupation of the employee if he or she is not an employee.

The majority attempts to factually distinguish four cases upon which petitioner relies.

The Court of Appeals in *Marlor v. Commissioner*, 251 F.2d 615 (2d Cir. 1958), reversed our opinion reported at 27 T.C. 624 in a per curiam opinion based upon Judge Raum's dissenting opinion. That dissenting opinion was based upon the proposition that, although the taxpayer's work toward his doctorate qualified him for appointment to a permanent teaching position, it had the immediate objective of enabling him to hold his present position by demonstrating progress toward earning a doctorate. In the instant case petitioner, as part of her yearly contract, had to agree to earn 6 college hours of credit each year, a requirement not necessary if she held a college degree. She merely telescoped the 6-hour requirement into 1 year by earning the remaining 15 hours of credit to earn her college degree.

In *Devereaux v. Commissioner*, 292 F.2d 637 (3d Cir. 1961), we were reversed by the Court of Appeals to which the instant case is appealable. Although the regulations at that time based allowability of the deduction upon primary purpose, the Court of Appeals pointed out that the Tax Court interpreted the regulations liberally and the regulations under the 1954 Code are much more liberal than those under the Internal Revenue Code of 1939. It can hardly be said that the majority in the instant case is engaged in a liberal interpretation of the regulations. Moreover, the Court of Appeals cited with approval the decision of the Court of Appeals for the Second Circuit and the dissenting opinion of Judge Raum in *Marlor v. Commissioner, supra.*

The Court of Appeals for the Ninth Circuit also followed the decision of the Court of Appeals for the Second Circuit and the

dissenting opinion of Judge Raum in *Marlor v. Commissioner, supra. Michaelsen v. Commissioner,* 313 F.2d 668, 671 (9th Cir. 1963).

Lastly, the majority attempts to distinguish *Laurano v. Commissioner,* 69 T.C. 723 (1978), by pointing out that "the taxpayer was already a fully certified teacher, and she was seeking to deduct the expenses of some additional education." The taxpayer there was a teacher certified to teach in Toronto, Canada, and during the taxable year before the Court was teaching in a parochial school in New Jersey. She took three courses at Kean College, none of which the diocese required her to take but one of which was required for certification in New Jersey; another directly related to the curriculum which she was teaching; and the third she hoped to use in the future in specialized teaching. The Commissioner relied upon (b)(2) of the regulations but we held for the taxpayer by emphasizing the following quoted language from (b)(2): "Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed." (Sec. 1.162–5(b)(2), Income Tax Regs.) That language applies with equal force here. Petitioner fully met the educational requirements of her teaching post at St. Clement's. The Commissioner there also relied upon (b)(3), arguing that because the taxpayer was seeking certification in New Jersey she was taking the courses to qualify for a new trade or business. We held that because the teaching duties in Canada and New Jersey involved the same general type of work, the taxpayer had previously met the educational requirements for qualification in her employment. I fail to see the distinction between qualifying to teach in a different school, whether it be in Canada or New Jersey, parochial or public, provided the duties involve the same general type of work. The majority does not hold nor does respondent argue that the duties were different in the Pennsylvania public schools than in the Pennsylvania parochial schools. The Commissioner acquiesced in that decision. 1978–38 I.R.B. 5. The effect of the majority opinion is to overrule *Laurano* which should not be done, especially in light of the Commissioner's acquiescence.

The majority relies upon *Garwood v. Commissioner,* 62 T.C.

699 (1974), and *Diaz v. Commissioner*, 70 T.C. 1067 (1978). Both of those cases are distinguishable because the taxpayers had not satisfied the minimum educational requirements of the teaching positions they held. In the instant case, petitioner met the educational requirements for the position she held.

The concurring opinions of Judges Drennen, Sterrett, and Chabot rely upon the merits of respondent's position under subsection (b)(3) of the regulations. The statutory notice of deficiency was not based upon (b)(3) nor did the respondent rely on (b)(3) at trial nor on brief. It is understandable why he did not rely on (b)(3) in view of his acquiescence in *Laurano v. Commissioner, supra.* It would be most unfair for us to decide the issue in favor of respondent on the application of (b)(3) because petitioner would be deprived of arguing the merits of (b)(3). The majority refuses to allow a portion of petitioner's expenses because she has not claimed an allocation and the cases (not in point) do not permit an allocation. Nevertheless, in my view, petitioner would prevail under (b)(3) because teaching in the public schools would not be a trade or business different than employment by the parochial schools. Because (b)(3) was not raised by respondent and, therefore, not properly before the Court, a close analysis of (b)(3) is unwarranted. Suffice it to say, however, the text of (b)(3) and the examples are extremely generous to teachers. To paraphrase Gertrude Stein in *Sacred Emily* (1913), "teacher is a teacher is a teacher is a teacher."

I would, therefore, hold that petitioner is not precluded from deducting her educational expenses in 1973 by either subsection (b)(2) or (b)(3) of section 1.162-5, Income Tax Regs. Counsel for respondent conceded in his opening statement that the courses . which petitioner took in 1973 maintained or improved her skills in her employment. Sec. 1.162-5(a)(1), Income Tax Regs. The cost of education in excess of that required by her employer, if the education maintains or improves her skills, constitutes an allowable deduction, sec. 1.162-5(c)(2), Income Tax Regs., and the expenses are deductible even though they lead to a degree, sec. 1.162-5(a), Income Tax Regs. I conclude that petitioner is entitled to deduct the education expenses she paid in 1973.

FEATHERSTON, FAY, IRWIN, QUEALY, HALL, and WILES, *JJ.*, agree with this dissenting opinion.